```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

 IN RE:                        .   Chapter 7
                               .
 RUSTY HAYNES                  .   Case No. 11-23212 (RDD)
                               .
                               .
            Debtor.            .
 _____  .

RUSTY HAYNES, INDIVIDUALLY  .
AND ON BEHALF OF ALL OTHERS .
SIMILARLY SITUATED          . Adv. Pro. No. 13-08370- rdd
                            .
      v.                    .
                            .
                            .
CHASE BANK USA, N.A.        .
 _____.
```

Modified Bench Ruling on Motion to Dismiss or to Strike Class
Allegations


BEFORE THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY COURT JUDGE


U.S. Bankruptcy Court, SDNY
300 Quarropas Street Room 248
White Plains, NY 10601


APPEARANCES:


Attorney for Rusty Haynes:      Charles W. Juntikka, ESQ.
                                CHARLES JUNTIKKA & ASSOCIATES
                                George F. Carpinello, ESQ.
                                Adam R. Shaw, ESQ.
                                BOIES, SCHILLER & FLEXNER, LLP


Attorneys for Chase:            Michael Y. Scudder, ESQ.
                                Al Hogan, ESQ.

```
                                    SKADDEN ARPS SLATE MEAGHER &
                                    FLOM


Also present:                       Deborah A. Reperowitz
via telephone                       TROUTMAN SANDERS
```

1          THE COURT:  I have before me a motion by Chase

2    Bank USA, N.A., the defendant in this adversary proceeding,

3    to dismiss the proceeding under Bankruptcy Rule 7012,

4    incorporating Federal Rule of Civil Procedure 12(b)(6),

5    for failure to state a claim on behalf of the lead

6    plaintiff, Mr. Haynes, or, in the alternative, to strike

7    the class action allegations in the complaint, premised

8    again on Bankruptcy Rule 7012, in this instance as it

9    incorporates Federal Rule of Civil Procedure 12(b)(1), on

10    the basis that the Court lacks subject matter jurisdiction

11    or the statutory authority to adjudicate a class action of

12    this nature.

13          The standard for dismissal under Rule 12(b)(6)

14    is well known.  When considering such a motion, the Court

15    must assess the legal feasibility of the complaint, not

16    weigh the evidence that might be offered in its support.

17    Koppel v. 4987 Corp., 167 F.3d 125, 133 (2d Cir. 1999).

18    The Court's consideration is limited to facts stated on

19    the face of the complaint and in the documents appended to

20    the complaint or incorporated into the complaint by

21    reference, as well as to matters of which judicial notice

22    may be taken.  Hertz Corp. v. City of New York, 1 F.3d.

23    121, 125 (2d Cir. 1993), cert. denied, 510 U.S. 1111(1994).

24    See also Difolco v. MSNBC Cable, LLC, 62 F.3d 104, 111 (2d

25    Cir. 2010) ("Where a document is not incorporated by

1    reference, the court may nevertheless consider it where

2    the complaint relies heavily upon its terms and effect.").

3    The Court accepts the complaint's factual allegations as

4    true, even if they are doubtful in fact, and must draw all

5    reasonable inferences in favor of the plaintiff.  Tellabs,

6    Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 321-23

7    (2007).  However, if a complaint's allegations are clearly

8    contradicted by documents incorporated into the pleadings

9    by reference, the Court need not accept them.  Labajo v.

10   Best Buy Stores, LP, 478 F.Supp.2d 523, 528 (S.D.N.Y.

11   2007).  Moreover, the Court "is not bound to accept as

12   true a legal conclusion couched as a factual allegation."

13   Papasan v. Allain, 478 U.S. 265, 286 (1986).  Instead, the

14   complaint must "state more than labels and conclusions,

15   and a formulaic recitation of the elements of the cause of

16   action will not do."  Bell Atlantic Corp. v. Twombly, 550

17   U.S. 544, 555 (2007).

18       In addition, while the Supreme Court has

19   confirmed, in light of the notice pleading standard of

20   Federal Rule of Civil Procedure 8(a), that a complaint

21   does not need detailed factual allegations to survive a

22   motion under Rule 12(b)(6), see Erickson v. Pardus, 551

23   U.S. 89, 93, (2007), and Twombly 550 U.S. at 556, its

24   "factual allegations must be enough to raise a right to

25   relief above the speculative level."  Twombly, 550 U.S. at

1    555.  If the claim would not otherwise be plausible on its

2    face, therefore, the complaint must allege sufficient

3    facts, to "nudge the claim across the line from

4    conceivable to plausible." Id. at 570.  Otherwise, the

5    defendant should not be subjected to the burdens of

6    continuing discovery and the worry of overhanging

7    litigation.  Id. at 556.

8         Applying this plausibility standard is "a

9    context-specific task that requires the reviewing court to

10   draw on its judicial experience and common sense."

11   Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009).

12   "Plausibility thus depends on a host of considerations:

13   the full factual picture presented by the complaint, the

14   particular cause of action and its elements, and the

15   existence of alternative explanations so obvious that they

16   render plaintiff's inferences unreasonable."  L-7 Designs

17   Inc. v. Old Navy, LLC, 647 F.3d 419, 430 (2d Cir. 2011).

18        In sum, the Court applies a two-step approach

19   under Rule 12(b)(6).  After identifying the elements of

20   the applicable cause of action, Iqbal, 556 U.S. at 675,

21   the Court must first note where the allegations are not

22   entitled to the assumption of truth because they are only

23   legal conclusions, id. at 679-80, and, second, it must

24   assess the factual allegations in context to determine

25   whether they plausibly suggest an entitlement to relief.

1     *Id.* at 681.  See generally, Harris v. Mills, 572 F.3d 66,

2     72, (2d Cir. 2009), and L-7 Designs Inc., 647 F.3d at 430.

3         With regard to a motion to dismiss under Federal

4     Rule of Civil Procedure 12(b)(1), the plaintiff bears the

5     burden of proving jurisdiction by a preponderance of the

6     evidence.  Aurecchione v. Schoolman Transportation Systems,

7     Inc. 426 F.3d 635, 638 (2d Cir. 2005).  Where the Court

8     relies solely on the pleadings and supporting affidavits,

9     the plaintiff need only make a prima facie showing of

10     jurisdiction, however.  Robinson v. Overseas Military

11     Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).  Here, the

12     issue of jurisdiction pertains to the Court's power to

13     issue an order granting the ultimate class action relief

14     sought. Whether the Court has subject matter jurisdiction

15     over a nationwide class action to remedy alleged

16     widespread breaches of debtors' discharges under Section

17     524(a) of the Bankruptcy Code is a question of law;

18     therefore, extrinsic facts are not relevant.

19         The Court addresses Chase's Rule 12(b)(6) motion

20     first.  In an action premised upon the alleged violation

21     of Mr. Haynes and the class members' discharges for

22     failure to correct their credit reports that list their

23     debt, post-discharge under Section 727 of the Bankruptcy

24     Code, as being only "charged off," rather than being

25     "discharged in bankruptcy," Chase contends that, under the

1    circumstances pled in the complaint, it in fact has no

2    obligation to revise or correct the credit reporting that

3    it has previously done.

4          Chase recognizes, for purposes of the motion

5    before me, although reserving its rights on appeal, the

6    general case law on this issue, which, as discussed at

7    length in In re Torres, 367 B.R. 478 (Bankr. S.D.N.Y.

8    2007), as well as in a number of other bankruptcy cases,

9    including In re Nassoko, 405 B.R. 515 (Bankr. S.D.N.Y.

10   2009); McKenzie-Gilyard v. HSBC Bank, Nevada NA, 388 B.R.

11   474 (Bankr. E.D.N.Y. 2007); Russell v. Chase Bank, U.S.A.,

12   NA, 378 B.R. 735 (Bankr. E.D.N.Y. 2007); and Laboy v.

13   Firstbank P.R. (In re Laboy), 2010 Bankr. LEXIS 345 (Bankr.

14   D. P.R. Feb.2, 2010), holds to the effect that, as stated

15   by Collier,

16          "The failure to update a credit report to

17          show that a debt has been discharged is also a

18          violation of the discharge injunction if shown to be

19          an attempt to collect the debt.  Because debtors

20          often feel compelled to pay debts listed in credit

21          reports when entering into large transactions, such

22          as a home purchase, it should not be difficult to

23          show that the creditor, by leaving discharged debts

24          on a credit report, despite failed attempts to have

25          the creditor update the report, is attempting to

1           collect the debt."

2     4 Collier on Bankruptcy, paragraph 524.02[2][B] (16th Ed.

3     2013), at page 524-23.

4           Chase contends, however, that under the facts of

5     the complaint this case law, much of which has arisen in

6     the context of motions to dismiss, is not applicable for

7     two reasons.  First, because Chase, as acknowledged by the

8     plaintiff with respect to the lead plaintiff's claim, sold

9     its debt pre-bankruptcy and therefore pre-discharge, to a

10     third party, Chase contends that it neither has an ongoing

11     obligation with respect to credit reporting under the Fair

12     Credit Reporting Act, 15 U.S.C. § 1681 et seq., nor, as it

13     no longer has a debt to enforce, under Section 524(a) of

14     the Bankruptcy Code.  Second, Chase argues that, if, as it

15     contends, it has no continuing obligation after the sale

16     of the debt, prepetition, under the Fair Credit Reporting

17     Act, it has no other duties under Section 524(a) of the

18     Bankruptcy Code.

19           Let me address that latter argument first.  The

20     complaint does not specifically assert a claim under the

21     FCRA.  Instead, it asserts a claim specifically under

22     Sections 105(a) and 524(a) of the Bankruptcy Code for

23     violation of the discharge under Section 727 of the Code.

24     In essence, then, Chase is asserting that the Fair Credit

25     Reporting Act has implicitly repealed Section 524(a) of

1   the Bankruptcy Code as interpreted by the foregoing case

2   law, or at least circumscribes Chase's duties under

3   Section 524(a) of the Bankruptcy Code with respect to

4   correcting debtors' credit reports.  Of course, the FCRA

5   did not expressly repeal or curtail Section 524(a) of the

6   Bankruptcy Code.  Absent a clearly expressed congressional

7   intention, moreover, repeal by implication is not favored.

8   Branch v. Smith, 538 U.S. 254, 273 (2003).  An implied

9   repeal will only be found where provisions in two federal

10   statutes are in fact in irreconcilable conflict or where

11   the latter statute covers the whole subject of the earlier

12   one and is clearly intended as a substitute.  Id. at 273,

13   quoting Posadas v. National Citibank, 296 U.S. 497, 503

14   (1936).  See also In re Jacques, 416 B.R. 63, 71-72 (Bankr.

15   E.D.N.Y. 2009).

16        Generally speaking, with regard to Section

17   524(a)/105(a) fact patterns, the case law as to implied

18   repeal has been contrary to Chase's argument.  That is,

19   courts have found that Sections 524(a) and 105(a) of the

20   Bankruptcy Code preempt other federal statutes that might,

21   on their face, otherwise be applicable, such as the FCPA.

22   See Diamonte v. Solomon & Solomon P.C., 2001 U.S. Dist.

23   LEXIS 14818 (N.D.N.Y. Sept. 18, 2001), and the cases cited

24   therein.  Where courts have allowed a federal statute to

25   be applied, even in the context of a Section 524(a)/105(a)

1    cause of action, they have done so by showing that the two

2    statutes are not in irreconcilable conflict and not by

3    ruling out the Section 524 cause of action.  See, for

4    example, Randolph v. IMBS Inc., 368 F.3d 726 (7th Cir.

5    2004).

6              I conclude that there is no irreconcilable

7    conflict between the Fair Credit Reporting Act and

8    Sections 524(a) and 105(a) of the Bankruptcy Code.  While,

9    as discussed in In re Torres, 367 B.R. at 489-90, a

10   lender's compliance with the FCRA is relevant to the

11   factual analysis of a Section 524(a)/105(a) claim, I

12   conclude that Section 524(a) of the Bankruptcy Code, as a

13   matter of drafting and Congressional intent, is intended

14   to be read broadly, given Congress' purpose, evident from

15   the face of the statute as well as its legislative history

16   -- including not only the legislative history of the

17   specific provision, but also its evolution from the

18   Bankruptcy Act of 1898 -- that Section 524(a) give as

19   complete effect as possible to the discharge under Section

20   727 of the Code.  See 4 Collier on Bankruptcy, paragraph

21   524.02 at 524-19.  See also, Robert P. Lawson Jr.,

22   Remedying Violation of the Discharge Injunction under

23   Bankruptcy Code 524, 20 Bankr. Dev. J. 77 (2003).  See

24   also Marrama v. Citizens Bank of Massachusetts, 549 U.S.

25   365, 367 (2007), noting that the discharge is a, if not

1      the, primary purpose of the Bankruptcy Code or the primary

2      protection offered by the Bankruptcy Code.  See also In re

3      Bogdanovich, 292 F.3d 104, 107 (2d Cir. 2007), and In re

4      Rizzo-Cheverier, 364 B.R. 532, 537 (Bankr. S.D.N.Y. 2007)

5      (same). Thus, even if Chase did not have an ongoing duty

6      under the FCRA to correct Mr. Haynes' credit reports, the

7      complaint's Section 524(a)/105(a) claim is not preempted.

8             Chase's other argument is closely related,

9      namely that, having sold its debt it cannot be seen in a

10     plausible way to have any interest in continuing to

11     enforce that discharged debt and, therefore, not only does

12     it lack an ongoing FCRA duty to correct the credit reports,

13     it also cannot be liable under Section 524 of the

14     Bankruptcy Code, which "operates as an injunction against

15     the commencement or continuation of an action, the

16     employment of process, or an act, to collect, recover or

17     offset any such debt as a personal liability of the debtor,

18     whether or not discharge of such debt has been waived."

19     11 U.S.C. Section 524(a).  See also In re Torres, 367 B.R.

20     at 489-90.

21            In support of this apparently common sense

22     contention, Chase relies upon an advisory note in

23     connection with proposed rule-making under the FCRA, which

24     states that, "The agencies do not expect that, after

25     transferring an account to a third-party, a furnisher

1    would update the current status of the account beyond

2    providing information to a credit reporting agency that

3    the account has been transferred." This appears at Volume

4    74 of the Federal Register, paragraph 31494. I should

5    note, however, that no rules were adopted as part of this

6    process and the FCRA itself is more broadly worded,

7    requiring reporting, including a duty to correct and

8    update information, by a person who "regularly, in the

9    ordinary course of business, furnishes information to one

10   or more consumer reporting agencies about the person's

11   transactions or experiences with any consumer, and has

12   furnished to a consumer reporting agency information that

13   the person determines is not complete or accurate." 15

14   U.S.C. Section 1681s-2(a)(2). Such a person "shall

15   promptly notify the consumer reporting agency of that

16   determination and provide to the agency any corrections to

17   that information or any individual information that is

18   necessary to make the information provided by the person

19   to the agency complete and accurate and shall not,

20   thereafter, furnish to the agency any of the information

21   that remains not complete or accurate." 15 U.S.C. Section

22   1681s-2(a)(2).

23       Even applying that statutory language to the

24   exclusion of the advisory note, however, Chase contends

25   that its last "transaction or experience" with respect to

1   plaintiff's debt was the sale itself to a third party,

2   pre-bankruptcy and, thus, pre-discharge, and, therefore,

3   that it has no obligation to continue to deal with the

4   credit reporting agencies to report that the debt is no

5   longer merely charged off, but, instead, has been

6   discharged through bankruptcy, or that it has any interest

7   in the debt's subsequent collection.  Thus, Chase contends,

8   the complaint does not show even inferentially that Chase

9   intended to assist the collection of Mr. Haynes'

10  discharged debt when it refused to correct his credit

11  report

12          The complaint, however, suggests otherwise.

13          First, as stated in paragraph 29, after the debt

14  was, in fact, discharged post-sale, Mr. Haynes called

15  Chase to request removal of the "charged-off" notation

16  next to his Chase account in light of the discharge, but

17  Chase refused to remove the "charged off" notation.

18  Paragraph 30 of the complaint goes on to state that "Chase

19  only did so after the Court issued an opinion involving

20  another Chase matter, In re Odenthal, at which time Chase

21  requested that the credit reporting agencies delete and

22  suppress the former Chase debt on Haynes' record."

23          Standing alone, such allegations, particularly

24  in light of Chase's prior sale of the debt, might not

25  support a claim that Chase refused Mr. Haynes' request to

1  correct his credit reports with the intention of assisting

2  in the debt's collection.  Significantly, however, other

3  sections of the complaint put Chase' handling of Mr.

4  Haynes' request in a context that sufficiently supports

5  such an inference.

6         Thus the complaint asserts in paragraph 16 that

7  "Chase has chosen not to advise the credit reporting

8  agencies to the fact that the class members' debts have

9  been discharged because Chase continues to receive payment

10  either directly or indirectly on discharged debts."  More

11  specifically, paragraph 19 states that "Chase has adopted

12  a pattern and practice of failing and refusing to update

13  credit information with regard to debts discharged in

14  bankruptcy because it sells those debts and profits by the

15  sale.  Chase knows that if credit information is not

16  updated, many class members will feel compelled to pay off

17  the debt, even though it is discharged in bankruptcy.

18  Thus, buyers of Chase debt know and are willing to pay

19  more for the fact that they will be able to collect

20  portions of Chase debt, despite the discharge of that debt

21  in bankruptcy."  Paragraph 20 then states, "Upon

22  information and belief, Chase receives a percentage fee of

23  the proceeds of each debt repaid to Chase and forwarded to

24  the buyer of Chase debt."

25         I conclude, therefore, based on the foregoing

1    allegations in the complaint that the complaint, if true -

2    - and I need to accept it as true -- states a cause of

3    action against Chase for breach of the discharge under

4    Sections 727 and 524(a)(2) of the Bankruptcy Code for

5    intentionally assisting in the collection of discharged

6    debt by not correcting the debtors' credit reports to

7    reflect that the debt has, in fact, been discharged.

8              I do so for two reasons.  First, paragraph 20 of

9    the complaint alleges that Chase continues to receive a

10   percentage payment of the proceeds of each debt repaid to

11   Chase and forwarded to the buyer of the debt.  In addition,

12   therefore, to having an economic interest in the debt

13   notwithstanding its sale, as alleged in paragraph 16,

14   Chase is alleged to act as the buyer's agent in forwarding

15   payments to the buyer of debt that it is aware has been

16   discharged after retaining a percentage.  Instead of

17   sending the money back or at least acting as if that debt

18   has been discharged, it thus is helping to enforce the

19   debt's collection for its and its buyer's benefit.  Given

20   Chase's continuing relationship with the debt, therefore,

21   and drawing, as I should, all inferences in favor of the

22   plaintiff in a motion to dismiss context, I conclude that

23   the complaint shows a motive and intent to assist the

24   collection of the discharged debt lying behind Chase's

25   refusal to correct the credit reports.

1     Based on the plain language of the FCRA Section

2  1681s-2(a)(2), as well, it appears to me, given paragraphs

3  16 and 20 of the complaint, that Chase is, notwithstanding

4  the sale of the debt, engaging in a "transaction or

5  experience" involving its former debtor.  Thus, limited

6  even to a reading of Section 524 that largely overlaps

7  with Chase's duties under the FCRA, the complaint alleges

8  a cause of action for Chase's ongoing intentional failure

9  to correct the credit reports and thereby assist in the

10  collection of discharged debt.

11     Furthermore, by failing on a systematic basis to

12  correct the credit reports, as alleged in the complaint,

13  Chase is enhancing its purchasers' ability to collect on

14  the debt, which is, after all, charged-off debt when

15  purchased, with a relatively high, I can infer, prospect

16  of the borrower going into bankruptcy.  Chase profits, I

17  can infer and as the complaint states, from that practice

18  by getting a higher purchase price from its buyers, even

19  if those buyers buy the debt before the bankruptcy has

20  occurred.  The buyers know, that is, that post-sale Chase

21  will refuse to correct the credit report to reflect the

22  obligor's bankruptcy discharge, which means that the

23  debtor will feel significant added pressure to obtain a

24  "clean" report by paying the debt.  Separate and apart

25  from Chase seemingly having a duty to correct the report

1       under the FCRA, as discussed above, no one has pointed to

2       any provision of applicable law that prohibits Chase from

3       correcting the credit reports.  And, in fact, Chase

4       eventually did so in respect of Mr. Haynes' credit report.

5       Therefore, I believe the complaint sets forth a cause of

6       action that Chase is using the inaccuracy of its credit

7       reporting on a systematic basis to further its business of

8       selling debt and its buyer's collection of such debt.

9           How the sale of the debt is reported supports

10      this conclusion.  In other words, such disclosure, or,

11      more aptly, its limited nature, also puts Chase's refusal

12      to correct the credit reports in context.  Mr. Haynes'

13      credit reports have been referred to repeatedly in the

14      complaint, as well as at oral argument; obviously, they

15      are front and center in this litigation and may be

16      considered in connection with Chase's 12(b)(6) motion.  It

17      is acknowledged that although those credit reports list

18      the debt as "sold," they do not identify the purchaser.

19      Therefore, as far as the debtor is concerned, the only

20      creditor to approach to correct the credit reports is

21      Chase, which, though it appears to be the only game in

22      town, as a matter of policy refuses to correct them (while,

23      in addition, retaining a percentage of payments sent to

24      Chase by the debtor, as opposed to Chase's -- undisclosed

25      -- buyer), highlighting further the perniciousness of

1    Chase's allegedly systematic approach in refusing to

2    correct such reports.

3         So, I will deny the motion for those reasons.

4         The motion also asserts, as noted, that the

5    complaint's class action request should be circumscribed

6    on jurisdictional grounds only to those breaches of

7    Section 524(a)(2) that have occurred in this District

8    during the time set forth in the complaint, that is, in

9    the Southern District of New York.  The basis for that

10   assertion is that the Court lacks subject matter

11   jurisdiction, more specifically, the power to enforce the

12   discharge of any debtor with the exception of debtors who

13   received a discharge in the Southern District of New York.

14   The motion accurately states that class actions comprising,

15   or brought on behalf of, debtors seeking to correct

16   alleged violations of their discharge under Section 524 of

17   the Bankruptcy Code have received a very mixed reception;

18   in fact, the majority of courts have either held that they

19   lack the power to determine such class actions or, as

20   stated in Chase's motion, can do so only with respect to

21   debtors who have been discharged in cases in their

22   district.  See generally, Kara Bruce, The Debtor Class, 88

23   Tulane Law Review 21 (2013).

24        There are three theories upon which courts have

25   refused to entertain nationwide debtor class actions to

1    remedy discharge violations or have circumscribed them on

2    a district-by-district basis.  The motion, I think

3    correctly, focuses on the third, which, as I stated during

4    oral argument, raises a close question for the Court.  But

5    before turning to that rationale, I should note the other

6    two grounds for dismissing on jurisdictional grounds a

7    nationwide class action regarding alleged violations of

8    the discharge.

9         The first is premised upon the notion that the

10    Court's exercise of jurisdiction over debtors other than

11    the debtor before it, or, in some courts, the debtors in

12    its district, will not lie because that determination does

13    not affect the lead plaintiff's estate, its bankruptcy

14    estate, and there is no "related to" jurisdiction in

15    respect of the other debtor class members' claims under 28

16    U.S.C. Section 1334(b).  See, for example, In re Knox, 237

17    B.R. 687, 693-94 (Bankr. N.D. Ill. 1999), and Fisher v.

18    Federal National Mortgage Ass'n, 151 B.R. 895 (Bankr. N.D.

19    Ill. 1993).  This line of cases is premised upon a

20    misreading of the statutory basis for bankruptcy

21    jurisdiction, however.

22         While it is true that a substantial portion of

23    bankruptcy jurisdiction is in rem, that is, jurisdiction

24    over the debtor's estate wherever located, it is not the

25    only basis for bankruptcy jurisdiction, which, under 28

1    U.S.C. Section 1334(b), extends to "all civil proceedings

2    arising under title 11," including under 11 U.S.C.

3    Sections 524 and 727.  In fact, as I noted before, these

4    fundamental, if not the fundamental, provisions of the

5    Bankruptcy Code have nothing to do with the debtor's

6    estate or in rem jurisdiction.  They have everything to do

7    with prohibiting the collection of in personam debts that,

8    before the bankruptcy discharge, were owed by the debtor.

9        In fact, the discharge does not even apply to in

10   rem interests, such as liens, which can be enforced

11   notwithstanding the discharge. Canning v. Beneficial Maine,

12   Inc. (In re Canning), 706 F.3d 64, 69 (1st Cir. 2013);

13   Holloway v. John Hancock Mut. Life Ins. Co. (In re

14   Holloway), 81 F.3d 1062, 1063 n. 1 (11th Cir. 1996).

15   Therefore, it is an abdication of the Court's jurisdiction

16   to limit it, as cases like Knox and Fisher have done, to

17   in rem matters.

18       Similarly, some courts have dismissed similar

19   national class actions on jurisdictional grounds based on

20   28 U.S.C. Section 1334(e), which states, "Only the

21   district court in which a case under title 11 is commenced

22   or is pending shall have exclusive jurisdiction of all the

23   property, wherever located, of the debtor as of the

24   commencement of such case, and of property of the estate

25   and overall claims or causes of action that involve

1    construction of section 327 of title 11 [which pertains to

2    the retention and compensation of professionals.]"  See

3    Williams v. Sears Roebuck & Company, 244 B.R. 858, 866

4    (Bankr. S.D. Ga. 2000).  Again, however, the present class

5    action does not involve a debtor's interests in property

6    or property of the estate, and, of course, it is not

7    related to the retention of professionals or other matters

8    under Section 327 of the Bankruptcy Code.  It is an action

9    to enforce the discharge, that is, to protect a statutory

10   right prohibiting the collection of in personam claims

11   against the members of the debtor class that arose pre-

12   bankruptcy.

13         The Court's jurisdiction here, as previously

14   noted, is premised instead upon a different provision of

15   the Judicial Code, 28 U.S.C. Section 1334(b).  It is worth

16   quoting first, however, 28 U.S.C. Section 1334(a), which

17   states, "Except as provided in Subsection (b) of this

18   section, the district courts shall have original and

19   exclusive jurisdiction of all cases under title 11."  That

20   provision thus gives the district courts exclusive

21   jurisdiction of the bankruptcy case generally, that is,

22   this Chapter 7 case, for example, which is located in a

23   particular venue.  That section, however, has a proviso:

24   "except as provided in Subsection (b)."  And Subsection

25   (b) states, "except as provided in Subsection (a)(2)

1    [which is irrelevant], and notwithstanding any act of

2    Congress that confers exclusive jurisdiction on a court or

3    courts other than the district courts, the district courts

4    shall have original, but not exclusive, jurisdiction of

5    all civil proceedings arising under title 11, or arising

6    in or related to cases under title 11."  11 U.S.C. Section

7    1334(b). (Emphasis added.)  As noted, the cause of action

8    before me arises under title 11; it arises under Sections

9    727, 524(a)(2) and 105(a) of the Bankruptcy Code, which

10   latter section provides, "The Court may issue any order,

11   process or judgment that is necessary or appropriate to

12   carry out the provisions of this title," i.e., in this

13   case, Sections 524(a)(2) and 727.

14        For purposes of this adversary proceeding,

15   therefore, 28 U.S.C. Section 1334(b) is the source of

16   bankruptcy jurisdiction in the federal courts generally,

17   lodging it with the district courts and then, by the

18   General Order of Reference, referring it pursuant to 28

19   U.S.C. Section 157(a)-(b) to the bankruptcy judges for

20   this district.  See 28 U.S.C. Section 157(b)(1), which

21   provides that bankruptcy judges "may hear and

22   determine . . . all core proceedings arising under title

23   11."  A "core proceeding" includes enforcement of the

24   discharge, there being few matters as "core" to the basic

25   function of the bankruptcy courts as the enforcement of

1    the discharge under Sections 524 and 727 of the Bankruptcy

2    Code.

3        I would spend more time on the foregoing two

4    ineffective rationales for denying jurisdiction over

5    nationwide class actions to address allegedly systemic

6    discharge violations; however, they are well dealt with in

7    an opinion from the Southern District of Texas Bankruptcy

8    Court, In re Cano, 410 B.R. 506 at pages 550 through 554

9    (Bankr. S.D. Tex. 2009).  As noted by Judge Isgur in that

10   opinion, one never gets to the issue of "related to"

11   jurisdiction under 28 U.S.C. Section 1334(b) or to 28

12   U.S.C. Section 1334(e) in this context, given the proper

13   source of the Court's "arising under title 11"

14   jurisdiction in 28 U.S.C. Section 1334(b).

15       The remaining rationale for the courts that have

16   found a lack of jurisdiction over nationwide debtor class

17   actions to address systematic discharge violations, is, as

18   I said, more closely reasoned.  In essence, these courts

19   contend that the basis for enforcing the discharge under

20   Sections 524(a)(2) and 727 of the Bankruptcy Code is the

21   individual court's discharge order.  These courts then

22   note extensive precedent in the non-bankruptcy context

23   under the All Writs Act, currently at 28 U.S.C. Section

24   1651 but going back to cases such as In re Debs, 158 U.S.

25   564, 594-95 (1895), for the proposition that only the

1     issuing court, that is, only the court issuing an

2     injunction, should have the power to enforce that

3     injunction.  This was the analysis undertaken by Cox v.

4     Zale Delaware, Inc., 239 F.3d, 910, 916-17 (7th Cir. 2001),

5     and several other courts cited in Chase's motion.

6          There is, however, a fundamental difference

7     between the normal injunction issued by a court after

8     considering the factors required to be applied in issuing

9     an injunction order and the injunction created by Congress

10    in Section 524(a) to support the discharge under Section

11    727 of the Bankruptcy Code.

12         As I noted during oral argument, the bankruptcy

13    discharge order is a form, a national form, which is

14    issued in every case when there is, in fact, a discharge.

15    By statute, in 524(a)(2), it operates as an injunction.

16    For the discharge injunction to be granted, the debtor

17    does not have to prove the factors required for an

18    injunction under Federal Rule of Civil Procedure 65.  He

19    or she merely needs to prove that the debt was, in fact,

20    subject to the discharge under Section 727 and not

21    declared non-dischargeable under Section 523 of the

22    Bankruptcy Code.  It is not a handcrafted order.  As I

23    stated during oral argument, although I review every order

24    that comes before me, I make one exception, the discharge

25    orders.  Those are entered routinely on my behalf and on

1    behalf of every judge in this district and I believe every

2    judge in the nation, by the Clerk of the Court once

3    certain milestones have been met in a bankruptcy case.

4         In addition, the logic behind Cox and similar

5    cases, which rely upon, in turn, cases in the context of

6    the All Writs Act, do not consider the difference between

7    Section 105(a) of the Bankruptcy Code and the All Writs

8    Act.  The latter states that "[t]he Supreme Court, and all

9    courts established by act of Congress, may issue all writs

10   necessary or appropriate in aid of their respective

11   jurisdictions and agreeable to the usages and principles

12   of law."  Very clearly, that statute is court-specific,

13   referring to "their respective jurisdictions," or the

14   respective jurisdictions of the individual courts whose

15   orders are to be enforced.

16        Section 105(a) of the Bankruptcy Code is quite

17   different.  Although modeled on the All Writs Act, it

18   states "The court may issue any order, process or judgment

19   that is necessary or appropriate to carry out the

20   provisions of this title."  It does not refer to aiding

21   the Court's own jurisdiction.  As I noted at oral argument,

22   the legislative history of this section, in H.R. Rep. 95-

23   595, states that, among other things, Section 105 is

24   intended to "cover any powers traditionally exercised by a

25   bankruptcy court that are not encompassed by the all writs

1    statute." (Emphasis added.)  The statutes are different,

2    in other words.  And I believe it is a mistake to rely

3    upon All Writs Act cases to hold that a bankruptcy court

4    has power under the applicable statute only to enforce its

5    own orders, as opposed to the Bankruptcy Code generally

6    and Sections 524(a) and 727 of the Code, in particular.

7    Again, this is well-discussed in the In re Cano case, 410

8    B.R. at 555.  The Court has its own contempt power, but it

9    also has Section 105(a) of the Code, which goes beyond its

10   own contempt power by, in its own terms, enabling the

11   Court to carry out specific provisions of the Bankruptcy

12   Code.

13        I should note that, in a somewhat different

14   context, although still relevant, the Second Circuit has

15   made it clear that the bankruptcy court does not have

16   exclusive jurisdiction to enforce the automatic stay under

17   Section 362(a) of the Bankruptcy Code, a similarly-worded

18   statutory injunction to Section 524(a).  That is, contrary

19   to the rationale of the Cox line of cases, its enforcement

20   is not "issuing court" specific.  See In re Baldwin-United

21   Corp. Litigation, 765 F.2d 343 (2d Cir. 1985); see also In

22   re Colasuonno, 697 F.3d 164, 172 n.4 (2d Cir. 2012).

23   Other courts have recognized a similar non-exclusivity

24   concept with regard to interpretation and enforcement of

25   the discharge under sections 524 and 727.  See In re

1    Watson, 192 B.R. 739, 746 (B.A.P. 9th Cir. 1996), aff'd

2    U.S. App. LEXIS 14663 (9th Cir., June, 16, 1997), and

3    Cisneros v. Cost Control Marketing & Sales Management, 862

4    F.Supp  1531, 1533 (W.D. Va. 1994), aff'd 64 F.3d 970 (4th

5    Cir. 1995), cert. denied, 517 U.S. 1187 (1996).  (There is

6    a caveat to this case law, at least as applied in the

7    Second Circuit, which is that while courts other than the

8    bankruptcy court have concurrent jurisdiction over

9    disputes pertaining to Section 362 of the Bankruptcy Code,

10    the automatic stay provision, and Section 524, if they are

11    erroneous their decision may be viewed as void ab initio

12    as being in violation of the stay or the discharge.  See

13    In re Kilmer, 501 B.R. 208, 214-15 (Bankr. S.D.N.Y. 2013),

14    and In re Enron Corp., 306 BR 465, 477 (Bankr. S.D.N.Y.

15    2004).)

16        There should be no issue here, either, that

17    Section 105(a) is properly exercisable to enforce the

18    discharge under Sections 524(a) and 727 of the Bankruptcy

19    Code.  Whereas Section 105(a) of the Code is not a license

20    for the Court to exercise general equity powers except in

21    furtherance of specific provisions of the Bankruptcy Code,

22    here there are such specific provisions, Sections

23    524(a)(2) and 727, for which Section 105(a) provides the

24    Court with enforcement power.  See In re Rizzo-Cheverier,

25    364 B.R. 532, 536-37 (Bankr. S.D.N.Y. 2007); see generally,

1    In re Kalikow, 662 F.3d 82, 97 (2d Circuit 2010):

2             "[A] court may invoke Section 105(a) if the

3         equitable remedy utilized is demonstrably necessary

4         to preserve a right elsewhere provided in the Code.

5         Those powers are in addition to whatever contempt

6         powers the court may have and must include the award

7         of monetary and other forms of relief to the extent

8         such awards are necessary and appropriate to carry

9         out the provisions of the Bankruptcy Code and provide

10        full remedial relief."

11   (Internal quotations and citations omitted.)

12            I conclude for the foregoing reasons, therefore,

13   that the Court has the statutory power and the subject

14   matter jurisdiction to decide this nationwide class action.

15   I have again been largely informed by the analysis

16   undertaken by Judge Isgur in the Cano case.  I also rely

17   heavily upon the First Circuit's analysis of 28 U.S.C.

18   Section 1334 and Section 105(a) of the Bankruptcy Code in

19   Bessette v. Avco Financial Services, Inc., 230 F.3d 439

20   (1st Cir. 2000), which reversed and remanded the District

21   Court's determination that only the court that had issued

22   a discharge order could decide a claim based on the

23   violation of the discharge.

24            It is true that, on remand, the district court,

25   rather than certifying a nationwide class, concluded that

1      the class should comprise only those debtors who received

2      discharges in the applicable district, in that case, the

3      District of Rhode Island.  See Bessette v. Avco Financial

4      Services Inc., 279 B.R. 442 (D.R.I. 2002).  As noted, that

5      approach has been taken by several other courts in other

6      districts, as well.  See, for example, In re Montano, 2012

7      Bankr. LEXIS 5155 (Bankr. D.N.M. Nov. 2, 2012).  I believe,

8      however, that the Court has broader jurisdiction than

9      those courts have applied, which is a hybrid, if you will,

10     of the two internally consistent approaches, (1) the

11     approach that premises the right to enforce the discharge

12     upon the All Writs Act, i.e., finding the power to enforce

13     only in the issuing court, or (2), alternatively, the

14     approach applying the full reach of bankruptcy

15     jurisdiction under Section 1334(b) of the Judicial Code

16     and Sections 105(a), 524 and 727 of the Bankruptcy Code to

17     the issue.  Therefore, I decline to follow the "district

18     only" cases and believe that any particular bankruptcy

19     court has the power to decide a nationwide class action

20     intended to remedy the alleged systematic violation of the

21     discharge.

22          That, of course, leaves the issue of whether

23     class certification itself is appropriate, and that's left

24     for another day.

25          So, I'm going to ask counsel for the plaintiffs

1          to submit an order to chambers, copying counsel for Chase,

2          consistent with that ruling.

3

4   Dated:   White Plains, New York

5            July 22, 2014

6

7                              /s/ Robert D. Drain_____

8                              Hon. Robert D. Drain

9                              United States Bankruptcy Judge